FLORENCE MAE SHELLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket 9570. Promulgated January 13, 1948.

*Arthur Manella, Esq.*, for the petitioner.
*A. J. Hurley, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: Respondent has determined a deficiency of $280.79 in petitioner's income and victory taxes for the taxable year ended December 31, 1943. For the purpose of computing petitioner's tax liability under the Current Tax Payment Act of 1943, respondent included in petitioner's taxable income for the years 1942 and 1943, respectively, the amounts of $283.60 and $916.77 as "income from annuity contract." Petitioner alleges that respondent erred in the inclusion of these amounts in petitioner's gross income.

The questions presented for consideration are (1) whether section 22 (b) (2) of the Internal Revenue Code, as applied to the facts of this case, is unconstitutional, and (2) whether a "dividend" received by the petitioner under the terms of the annuity contract, which entitled her to "participate in the divisible surplus" of the insurance company, constitutes a reduction of the cost of the annuity contract and is therefore not income, or is to be included in gross income under section 22 (a), or as an "amount received as an annuity," within the meaning of section 22 (b) (2) of the Internal Revenue Code.

The facts herein have been stipulated as follows and are found to be as stipulated:

1. Frances Kephart, mother of petitioner, died on May 17, 1941. Pursuant to instructions contained in her Will, the executor of Frances Kephart's estate purchased from the Bankers Life Company of Des Moines, Iowa, a mutual legal reserve life insurance company, for a single stipulated payment of $30,559.08, a refund annuity contract on the life of petitioner, a copy of which is attached hereto and made a part hereof as Exhibit A. Said contract was issued on August 12, 1942, at which date petitioner's age was twenty-three years and nine months. By the terms of the annuity contract petitioner, as annuitant, is entitled to receive the amount of $70.90 each month during her lifetime. By the terms of said annuity contract petitioner is also entitled to participate in the divisible surplus of the company through the receipt of dividends, which at the option of petitioner may be withdrawn in cash or applied to increase the amount of all future annuity payments under the contract. If at the death of petitioner the total amount of the $70.90 monthly payments received by her during her lifetime is less than the $30,559.08 purchase price of the annuity, the executor or administrator of petitioner's estate is entitled to receive such $70.90 monthly payments until the total amount paid by the company (excluding dividends) equals the purchase price of $30,559.08.

2. During the calendar year 1942, petitioner received four monthly payments of $70.90 each under the terms of the aforementioned annuity contract, or a total of $283.60. During the calendar year 1943, petitioner received twelve monthly payments of $70.90 each under the terms of the aforementioned annuity contract, or a total of $850.80. Petitioner also received on August 12, 1943, the amount of $253.54 as a dividend pursuant to the terms of the said annuity contract.

3. Petitioner filed her income tax returns for the calendar years 1942 and 1943 with the Collector of Internal Revenue for the Sixth District of California at Los Angeles, and did not include therein as part of her gross income any part of the annuity payments of $280.60 [*sic*][1] received by her in 1942, nor any part of the $850.80 annuity payments, nor the $253.54 dividend payments received by her during the calendar year 1943.

The annuity contract, which was attached to the stipulation as Exhibit A, was issued on August 12, 1942, and the monthly payments thereunder began on September 12, 1942. In addition to the terms

---

[1] This amount, obviously, should be $283.60, as it appears in the preceding paragraph.

10 T. C.

which have been summarized above, the contract provided, in part, as follows:

\* \* \* \* \* \* \*

This Contract will participate in the divisible surplus of the Company \* \* \*

\* \* \* \* \* \* \*

Reserve Basis. The 1937 Standard Annuity Table of Mortality and interest at the rate of two per cent per annum shall be the basis for computing the reserve on this Contract.

\* \* \* \* \* \* \*

### DIVIDENDS

Dividends. The proportion of any divisible surplus, as determined by the Company, accruing upon this Contract while in force shall be ascertained annually by the Company and apportioned to this Contract at the end of the first and each subsequent contract year.

Application of Dividends. Any dividend apportioned to this Contract prior to the death of the Annuitant may be:

    1. Withdrawn in cash, or

    2. Applied to increase the amount of all future annuity payments under this Contract.

Unless otherwise elected within three months after any dividend is due the dividend shall be applied under the automatic option required by the laws of the state in which this Contract is applied for, except that if those laws do not provide an automatic option, the dividend shall be paid in cash to the Annuitant.

Any dividend apportioned to this Contract after the death of the Annuitant shall be paid in cash.

The sum of $916.77 included by respondent in petitioner's income for 1943 as income from the annuity contract is 3 per cent of $30,559.08. the consideration paid for the annuity.

Petitioner's first and principal contention is that section 22 (b) (2) of the Internal Revenue Code, which, in so far as here material, is set forth in the margin,[2] is unconstitutional as applied to the facts of the instant case. Petitioner urges that the statute, if applied herein, will result in a direct tax upon property, and that such direct tax can not be imposed without apportionment among the states according to population as required by Article 1, section 2, clause 3, and section 9, clause 4, of the Constitution of the United States. Upon the general question of the constitutionality of section 22 (b) (2), see *F. A. Gillespie*, 38 B. T. A. 673; *Anna L. Raymond*, 40 B. T. A. 244; affd., 114 Fed. (2d) 140; certiorari denied, 311 U. S. 710; *Estate of Mary A. Bedford*, 40 B. T. A. 475; *Maud Gillespie*, 43 B. T. A. 399; reversed on other grounds, 128 Fed. (2d) 140; and *Manne* v. *Commissioner*, 155 Fed. (2d) 304.

---

[2] \* \* \* Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. \* \* \*

This argument of petitioner is, to some extent, predicated on her other contention urged herein, to the effect that no part of the "dividend" of $253.54 received by her in 1943 constituted gross income. Petitioner contends that this dividend constituted a return of premium in excess of the cost of carrying the annuity policy which was based upon an unduly conservative estimate of the company's earnings and the amounts received as "dividends" should be credited against the premium paid or cost of the annuity contract rather than be considered as income. In support of this contention petitioner cites Regulations 111, section 29.22 (a)–12, which reads in part as follows:

\* \* \* Amounts received as a return of premiums paid under life insurance, endowment, or annuity contracts, and the so-called "dividend" of a mutual life insurance company which may be credited against the current premium, are not subject to tax.

This argument assumes as proved the point at issue, i. e., whether the "dividend" received by petitioner was an amount received as a return of a premium paid under an annuity contract.

We have set out in detail all of the facts before us. Briefly stated, the situation as to this issue is that petitioner is the annuitant under an annuity contract purchased for her by the executor under her mother's will, and has received a "dividend" during one of the taxable years pursuant to a provision in the contract that the proportion of the divisible surplus of the company accruing upon the annuity contract shall be apportioned to the contract annually and any dividend resulting from such apportionment may be paid to the annuitant in cash or applied by her to increase the amount of future annuity payments. The "dividend" in question was paid in cash to petitioner.

Upon this record we are unable to say as a matter of law that the amounts received by petitioner as "dividends" must be considered diminutions of the premium paid for the annuity contract rather than augmentations of the income derived therefrom, or to conclude that petitioner received the "dividend" here involved "as a return of premiums paid under \* \* \* annuity contracts \* \* \*." Where there is a lack of proportion between the cost of an annuity contract and the benefits provided thereby for the annuitant, a company writing such a contract may provide for the correction of the disproportion by reducing the cost of the contract or by increasing the benefits to the annuitant. In the instant case there is no provision in the contract of annuity to the effect that the so-called dividends referred to therein shall be paid by the insurance company or received by the petitioner (either as the annuitant or the assignee of the rights of the executor who purchased the annuity contract) "as a return of premiums paid under \* \* \* annuity contracts." To the contrary, the facts which we have before us indicate that the so-called dividend was received by petitioner as an increase in the benefits to which she was entitled as an

annuitant upon an annuity policy which was purchased for the purpose of producing current income to her.

Nor can we say that the "dividend" was one "which may be credited against the current premium" within the meaning of the regulation. In the instant case there is no "current premium."

Therefore, it follows that the amount of such dividend is includible in petitioner's gross income under section 22 (a) or section 22 (b) (2) of the Internal Revenue Code.

Respondent has treated the "dividend" as an amount "received as an annuity" and has included it in petitioner's gross income under section 22 (b) (2), in that he has treated petitioner's total receipts in 1943 from the company writing the annuity in the amount of $1,114.34 (the monthly payments amounting to $850.80 plus the "dividend" of $253.54) as "income from annuity contract" and of this amount has included in petitioner's gross income the amount of $916.77 representing 3 per cent of the consideration paid for such contract. We consider it unnecessary to decide whether the "dividend" is properly includible under this section or under section 22 (a). If it should be considered as properly includible under section 22 (a), then, in effect, the question under the first issue would be whether the sum of $763.23 ($916.77 minus $253.54) which was also included by respondent in petitioner's gross income represented in part a return of capital which was embodied in the annual annuity payment of $850.80. If it should be considered as properly includible under section 22 (b) (2), then, in effect, the question under the first issue would be whether the sum of $916.77, which was included in petitioner's gross income, represented in part a return of capital which was embodied in the annuity payments for 1943 of $1,114.34.

Petitioner's argument that section 22 (b) (2) is unconstitutional as applied to the facts of the instant case is predicated upon her contention that the application of this section of the code would result in the taxation of capital rather than income.

Assuming, *arguendo*, the validity of petitioner's position upon this question as a matter of law, and refraining from in any way expressing our agreement therewith, we are of the opinion that petitioner has not proved herein that the application of section 22 (b) (2) to the facts of the instant case results in the taxation of capital rather than income.

On this point the Circuit Court of Appeals for the Eighth Circuit said in the recent case of *Manne* v. *Commissioner*, *supra*, at page 307: "A taxpayer claiming that the section of the Revenue Code in question imposes in a given case a tax upon the return of capital under the guise of a tax on income is under the burden of establishing that no income was, in fact, received by him from his investment, or at least that the income actually received is less than 3 per cent upon his investment."

In the instant case the petitioner has failed to prove that, of the total amounts received by her during the taxable years from the company, the amount received as income was less than 3 per cent upon the investment in or premiums paid for the annuity in question. See *Virginia M. MacArthur*, 8 T. C. 279, 283.

We are therefore unable to conclude that the application of section 22 (b) (2) to the facts of the instant case results in the imposition of a direct tax upon property without apportionment which would violate the provisions of the Constitution of the United States above set forth.

In view of the conclusion which we have reached, we do not find it necessary to consider petitioner's further contention that, if section 22 (b) (2) is not held to be unconstitutional, the "dividends" received each year should be applied against the purchase price of the annuity in determining for each subsequent year the aggregate premiums or consideration paid. In any event, as suggested by the respondent, this question is moot in the present proceeding, since no "dividends" were received in the year 1942 which could affect the taxable year 1943.

Reviewed by the Court.

*Decision will be entered for the respondent.*